UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN LEE BALSTER<br><br>Defendant. | CR. 16-50078-JLV<br><br><br><br>ORDER |

**INTRODUCTION**

Defendant Ryan Balster, appearing *pro se*,[1] filed a motion for compassionate release. (Docket 106). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Balster's motion. (Dockets 140, 145 and 146). For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 20-6**

Standing Order 20-06,[2] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions

---

[1]Balster was represented by Molly Quinn; however, she terminated her representation on June 29, 2021.

[2]See https://www.sdd.uscourts.gov/socraa ("SO 20-06").

under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

## FACTUAL BACKGROUND

On May 21, 2018, Ryan Balster was sentenced to a term of imprisonment of 240 months and a life term of supervised release for his conviction for attempted enticement of a minor using the internet. (Docket 121). According to Mr. Balster's presentence report ("PSR"), "[b]ased upon a total offense level of 34 and a criminal history category of V, the guideline imprisonment range is 235 months to 293 months." (Docket 115 ¶ 62).

Mr. Balster is currently an inmate at the United States Penitentiary in Fairton, New Jersey ("FCI Fairton"). (Docket 140). According to the United States, Mr. Balster has a scheduled release date of June 6, 2033. (Docket 146 at p. 1). According to the Bureau of Prisons' ("BOP") website, Mr. Balster's release date is June 6, 2033.[3]

## MR. BALSTER'S CLASSIFICATION

On June 15, 2021, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 143). They jointly "agree that this case should be categorized as a Low Priority case." Id.

---

[3]See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and

4

compelling examples.  Id.  Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances.  Id.  There was a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons.  U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since December 2018 when FSA became law.[4]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies; see Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").  The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.  It is clear Congress wishes to

---

[4]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

5

"[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

In this case, it is unclear if Mr. Balster exhausted the administrative relief provision contemplated by § 3582(c)(1)(A). Mr. Balster claims he submitted a request for compassionate release to FCI Fairton's Warden in 2020 but fails to provide support for this claim. (Docket 140). Furthermore, the government asserts it inquired with the BOP regarding the existence of such a request. (Docket 146 at p. 2). The BOP indicated it has no request within their electronic records system. Id. The court will review Mr. Balster's motion for compassionate release on its merits regardless.

### B. Defendant's Motion for Compassionate Release

Mr. Balster makes two arguments in support of his request for compassionate release. (Docket 140 at p. 5). First, Mr. Balster argues his medical conditions justifies compassionate release. Second, he argues the court should release him so he may care for his mother.

In support of his first argument, Mr. Balster requests release because he suffers from "high cholesterol, sleep apnea, autism spectrum disorder, anxiety,

6

depression and psychological issues." (Docket 140 at p. 5). He providers no evidence in support of his claims.[5] Mr. Balster does not allege he requires release due to an increased risk of contracting COVID-19.

Mr. Balster's medical records confirm he suffers from generalized anxiety, an unspecific developmental disorder of scholastic skill and Autism Spectrum Disorder Without Intellectual Impairment ("Asperger"). (Docket 145 at p. 20). The records also reveal he has been administered various medications to treat anxiety, depression and other mental health concerns. Id. at p. 97.

Mr. Balster fails to establish he is suffering from a serious physical or medical condition or experiencing deteriorating physical or mental health because of the aging process that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover or that he is suffering from serious functional or cognitive impairment. The court finds that Mr. Balster's medical claims are neither extraordinary nor compelling reasons that justify compassionate release.

In support of his second argument, Mr. Balster argues he needs to be released "to help [his] mother out because she is ill, which is a muscle disease." (Docket 140 at p. 5). Mr. Balster does not provide evidence of his mother's medical condition or any evidence he is needed as her caretaker.

---

[5]Mr. Balster states he attached a "proposed release plan, additional medical information, vaccine, psychological" documents [Docket 140 at p.5], but the court has not received the documents.

Although not unsympathetic, the court does not find Mr. Balster's family circumstances to be "extraordinary and compelling" reasons that justify compassionate release.

**C. 3553(a) Factors**

The 3553(a) sentencing factors further show that compassionate release is not warranted. These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

In Mr. Balster's case, the nature and circumstances of the offense—attempted enticement of a minor using the internet—is extremely serious and would have been harmful and devastating to the intended victim if Mr. Balster's plan had come to fruition. 18 U.S.C. § 3553(a)(1). The court does not minimize Mr. Balster's conduct just because an actual minor was not involved.

Mr. Balster's unlawful conduct started on May 22, 2016, by him "pick[ing] [a] phone number randomly" and sending inappropriate messages. (Docket 115 ¶ 5). The owner replied that she was 15 years old to which Mr.

Balster stated that "don't matter" and sent a picture of his penis and requested a picture of the 15-year-old girl. Id. The next day officers conducted an investigation in which an agent texted Mr. Balster that the persona was a 15-year-old girl. Id. Mr. Balster replied regarding being horny, masturbating and meeting to have sex. Id. During the conversation, Mr. Balster sent the persona a picture of himself, a picture of an erect penis and information regarding his home address. Id. Mr. Balster set up a meeting time and location with the persona. Id. Mr. Balster arrived at the arranged location and admitted he was there to "have sex with her." Id.

The history and characteristics of the defendant require the court to consider the defendant as a whole person. In 2009, Mr. Balster was convicted for traveling with the intent to engage in illicit sexual contact. (Docket 115 at pp. 7-8). The details of the prior offense were nearly identical, in which Mr. Balster admitted he knew the victim was 12 years old and admitted he showed her his face, torso and genitals on the webcam. Id. ¶ 25. While Mr. Balster was serving his term of supervised release, he was terminated from his program for exhibiting poor boundaries with other clients by repeatedly talking about sexual contact with another BMS client; for being untruthful about texting harassing messages that were sexual in nature to a female; for accessing a computer for online services and possessing a cell phone with texting and internet access without permission. Id. Mr. Balster was successfully discharged from the South Dakota Developmental Center's sexual interest and life skills program. Id. Mr. Balster continued to show significant

9

improvement, however, on May 27, 2016, a petition to revoke supervised was filed in CR. 08-40060 alleging Mr. Balster engaged in sexual contact with a minor.  As part of the plea agreement in the instant offense, the government agreed to dismiss the petition.  The court is concerned by Mr. Balster's inability to learn from his prior sentence, as Mr. Balster was on supervised release when he committed the current offense.

Mr. Balster had a "total offense level of 34 and a criminal history category of V, [thus,] the guideline imprisonment range is 235 months to 293 months." (Docket 115 ¶ 62).  Mr. Balster's sentence was 240 months, near the bottom of the guidelines range.  (Dockets 115 ¶ 62 and 121).

There was no evidence provided that Mr. Balster participated in any BOP treatment programs or any other programing available.

After careful consideration, the court concludes Mr. Balster's sentence of 240 months continues to be appropriate for the seriousness of the crime to which he pled guilty.

**ORDER**

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 140) is denied.

Dated February 28, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE